FILED
CLERK, U.S. DISTRICT COURT
5/5/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: eva DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MUSTAFA QADIRI,<br>Defendant. | No. 8:21-cr-00081-JLS<br>I N D I C T M E N T<br>[18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. 1343: Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1957: Money Laundering; 18 U.S.C. § 982: Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1344(2), 2(b)]

A. INTRODUCTORY ALLEGATIONS

1. At times relevant to this Indictment:

Defendant QADIRI and the QADIRI-Controlled Entities

2. Defendant MUSTAFA QADIRI was a resident of Irvine, California.

3. Defendant QADIRI operated purported mortgage businesses All American Lending, Inc. ("AAL") and All American Capital Holdings, Inc. ("AACH") and purported advertising businesses RadMediaLab, Inc. ("RadMedia") and Ad Blot, Inc. ("Ad Blot") (collectively the "QADIRI-Controlled Entities"), all located in Newport Beach, California.

The Paycheck Protection Program

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). PPP loan proceeds were required to be used by the business to pay certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities.

5. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. Such certifications required the applicant to affirm that "The [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," and that the

"loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules. The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

6. In the PPP loan application, the applicant was required to state, among other things, the business's: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses, including federal tax filings and bank account records.

7. A small business's PPP loan application would be received and processed by a participating lender approved by the Small Business Administration ("SBA"). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

SBA-Approved Lender

8. "Bank A" was a financial institution and an SBA-approved participating lender of PPP loans based in Teaneck, New Jersey, whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

9. "Bank B" was a financial institution and an SBA-approved participating lender of PPP loans based in Salt Lake City, Utah, whose deposits were insured by the FDIC.

10. "Bank C" was a financial institution and an SBA-approved participating lender of PPP loans based in Minneapolis, Minnesota, whose deposits were insured by the FDIC.

B. THE SCHEME TO DEFRAUD

11. Beginning no later than in or around May 2020 and continuing until at least in or around December 2020, in Orange County, within the Central District of California, and elsewhere, defendant QADIRI, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of Banks A, B, and C by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

12. The fraudulent scheme operated, in substance, as follows:

a. In May and June 2020, defendant QADIRI submitted, and caused to be submitted, false and fraudulent applications to Banks A, B, and C for PPP loans on behalf of the QADIRI-controlled entities (collectively the "PPP Applications").

b. In the PPP Applications, defendant QADIRI made and caused to be made, false and fictitious statements and provided falsified documents to the SBA and Banks A, B, and C, including inflating the number of employees to whom the companies paid wages, providing altered bank account records with inflated balances, providing fictitious Quarterly Federal

Tax Return Forms 941 that were never filed with the Internal Revenue Service, and falsely certifying that the loans would be used for permissible business purposes.

c. Defendant QADIRI electronically submitted, and caused to be submitted, the false and fictitious statements and falsified documents to the SBA and financial institutions in support of the fraudulent PPP loan applications to obtain large PPP loans for payroll and company expenses that did not exist.

d. In reliance on defendant QADIRI's material false and fraudulent statements and his concealment of material facts, Banks A, B, and C approved and funded the PPP Loan Applications, and thereafter transferred approximately $5 million in loan proceeds by interstate wire into bank accounts that defendant QADIRI controlled.

e. Defendant QADIRI used the fraudulently obtained PPP loan proceeds for his own personal benefit, including for expenses prohibited under the requirements of the PPP program, such as the purchase of luxury vehicles, to take lavish vacations, and pay his personal expenses.

13. Based on the fraudulent scheme above, defendant QADIRI submitted and caused the submission of at least four fraudulent PPP loan applications and received over $5 million in PPP proceeds from Banks A, B, and C.

B. EXECUTIONS OF THE SCHEME

14. On or about the following dates, in Orange County, within the Central District of California, and elsewhere, defendant QADIRI committed and willfully caused others to commit

the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|---|---|---|
| ONE | 5/21/2020 | Submission of application for PPP Loan to Bank A on behalf of RadMedia |
| TWO | 5/29/2020 | Submission of application for PPP Loan to Bank B on behalf of AAL |
| THREE | 6/1/2020 | Submission of application for PPP Loan to Bank C on behalf of Ad Blot |
| FOUR | 6/4/2020 | Submission of application for PPP Loan to Bank B on behalf of in the name if AACH |

COUNTS FIVE THROUGH EIGHT

[18 U.S.C. § 1343]

15. The Grand Jury re-alleges paragraphs 1 through 10 and 12 through 14 of this Indictment here.

A. THE SCHEME TO DEFRAUD

16. Beginning in or around May 2020 and continuing until at least in or around December 2020, in Orange County, within the Central District of California, and elsewhere, defendant MUSTAFA QADIRI, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA and financial institutions as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of the SBA and Banks A, B, and C by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

17. The fraudulent scheme operated and was carried out, in substance, as described in paragraph 12 of this Indictment.

B. USE OF THE WIRES

18. On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant QADIRI transmitted and caused the transmission of the following items by means of wire and radio communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| FIVE | 5/22/2020 | Transfer of approximately $840,937 in PPP loan proceeds from Bank A, sent by means of an interstate wire, into RadMedia's U.S. Bank Account in Newport Beach, California |
| SIX | 6/3/2020 | Transfer of approximately $1,512,495 in PPP loan proceeds from Bank B, sent by means of an interstate wire, into AAL's U.S. Bank Account in Newport Beach, California |
| SEVEN | 6/3/2020 | Transfer of approximately $739,695 in PPP loan proceeds from Bank C, sent by means of an interstate wire, into Ad Blot's Bank of America Account in Newport Beach, California |
| EIGHT | 6/8/2020 | Transfer of approximately $1,985,320 in PPP loan proceeds from Bank B, sent by means of an interstate wire, into AACH's Bank of America Account in Newport Beach, California |

COUNT NINE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

19. The Grand Jury re-alleges paragraphs 1 through 10 and 12 through 14 of this Indictment here.

20. On or about June 4, 2020, in Orange County, within the Central District of California, and elsewhere, defendant MUSTAFA QADIRI knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant QADIRI knew belonged to another person, namely, the name, social security number, and signature of K.E., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Four of this Indictment.

COUNTS TEN THROUGH FIFTEEN

[18 U.S.C. § 1957]

21. On or about the dates set forth below, in Orange County within the Central District of California, and elsewhere, defendant MUSTAFA QADIRI knowingly engaged in the following monetary transactions of a value greater than $10,000, involving funds that he knew to be criminally derived property, and which property, in fact, was derived from specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TEN | 6/8/2020 | Withdrawal of $496,330 from AACH's Bank of America Account to purchase Cashier's Check No. 1113010056 |
| ELEVEN | 6/8/2020 | A $350,000 check drawn from AACH's U.S. Bank Account to Newport Beach Automotive Group with the memo "CBRE RE A06683." |
| TWELVE | 6/9/2020 | A $70,000 check drawn from AACH's U.S. Bank Account written to Klasse, a car dealership, with the memo "Invoice 0177830" |
| THIRTEEN | 6/18/2020 | A $290,027.73 check drawn from AACH's U.S. Bank Account to "AN Texas Region," a car dealership, with the memo "Marketing" |
| FOURTEEN | 6/18/2020 | Withdrawal of $575,091.60 from RadMedia's U.S. Bank to purchase Cashier's Check No. 4634525106 |
| FIFTEEN | 10/8/2020 | Transfer of $37,374.25 from AACH's U.S. Bank Account to American Express |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

22. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction of the offenses set forth in any of Counts One through Eight or Ten through Fifteen of this Indictment.

23. The defendant so convicted shall forfeit to the United States of America the following:

a. A 2011 Ferrari 458 Italia, Vehicle Identification Number ZFF67NFA3B0177830, registered to All American Capital Holdings, Inc ("AACH") with California license plate 8SCR262;

b. A 2018 Lamborghini Aventador S, Vehicle Identification Number ZHWUG4ZDXJLA06683, registered to AACH, with California license plate 8RJT950;

c. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

d. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

24. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the

defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1028A and 28 U.S.C. § 2461(c)]

25. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 1028 and Title 28, United States Code, Section 2461(c) in the event of Defendant's conviction of the offense set forth in Count Nine of this Indictment.

26. The Defendant, if so convicted, shall forfeit to the United States of America the following:

a. A 2011 Ferrari 458 Italia, Vehicle Identification Number ZFF67NFA3B0177830, registered to All American Capital Holdings, Inc ("AACH") with California license plate 8SCR262;

b. A 2018 Lamborghini Aventador S, Vehicle Identification Number ZHWUG4ZDXJLA06683, registered to AACH, with California license plate 8RJT950;

c. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

d. Any personal property used or intended to be used to commit the offense; and

e. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

27. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Sections 982(b) and 1028(g), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

TRACY L. WILKISON
Acting United States Attorney

Scott M. Garringer
Deputy Chief, Criminal Division For:

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

JENNIFER L. WAIER
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office